Hon. Lawrence T. Kurlander Director of Criminal Justice and Commissioner Division of Criminal Justice Services
You have requested our opinion as to the legality of a corporation owned largely by former employees of the New York State Division of Criminal Justice Services (DCJS) submitting a bid in response to a request for proposals for a State-wide Automated Fingerprint Identification System.
The facts are related in your letter as follows: On February 6, 1985, two DCJS employees left DCJS to work in the private sector for a company referred to herein as the "Private Firm". Prior to their departure, these persons worked in the Division's Identification Research and Planning Unit. The purpose of the unit was to develop procedures, equipment and systems to improve the Division's fingerprint identification operations. The major project undertaken between 1982 and 1985 was the development of an Automated Classification System (ACS). The ACS was being designed to automate the process of classifying fingerprints. The system would electronically scan the fingerprint and create a digitized image of the fingerprint in a computer memory. Specialized algorithms would then be used to determine automatically the fingerprint pattern, locate the core and delta and determine the ridge count. The resulting classification information would then be transmitted to the Division's regular computer system for searching of the computerized fingerprint files. By 1985, the unit was beginning the construction of the prototype work station. The subject individuals were part of a four-person unit responsible for developing ACS. One was the director of the unit and the other was the senior technical staff person in the unit. Once these persons left the Division, the ACS project was terminated because of the inability to recruit qualified replacements.
The "Private Firm" was incorporated as a close corporation under the laws of New York by the subject persons in early 1983 while both were employed by DCJS and working on the ACS project. One individual is president of the "Private Firm" and the other is vice-president and at the time the two persons left DCJS they were two of the three investors in the "Private Firm". According to the May 9, 1983 business plan of the "Private Firm", the intial objective of the corporation was to provide a "cost-beneficial fingerprint identification process" and the initial product was to be "a series of Automated Fingerprint Systems for ten-print fingerprint classification and search processes". (DCJS was not aware of the incorporation of the "Private Firm" until October, 1984 when the subject persons announced their expected resignation.)
DCJS plans to contract for the provision of an Automated Fingerprint Identification System for New York. The commercially available systems that are now being marketed are functionally more expansive than the ACS that was being developed by DCJS. The initial acquisition and automated classification of fingerprints in these new systems, however, are quite similar to the technology that was being developed through the ACS project at DCJS.
As part of the 1986-1987 State budget, $2.35 million was appropriated to begin implementation of the Automated Fingerprint Identification Program for New York. DCJS is preparing a Request for Proposals (RFP) as part of a competitive bidding process to acquire and implement the system. It is expected that the RFP will be issued in September, 1986 and that bids will be received in December, 1986. Your question is whether DCJS should permit the "Private Firm" to submit a proposal as part of the competitive bidding process for the provision of the Automated Fingerprint Identification System.
Section 73(7) of the Public Officers Law provides as follows:
 "No person who has served as an officer or employee of a state agency shall within a period of two years after the termination of such service or employment appear before such state agency or receive compensation for any services rendered on behalf of any person, firm, corporation or association in relation to any case, proceeding or application with respect to which such person was directly concerned and in which he personally participated during the period of his service or employment . . ."
DCJS is a division in the Executive Department (Executive Law, §836[1]). Thus, the subject persons are State officers or employees for purposes of sections 73 and 74 of the Public Officers Law (§§ 73[1], 74[1]).
In submitting a proposal to provide to DCJS an Automated Fingerprint Identification System, it seems clear that the subject persons, through the "Private Firm" would be appearing before DCJS within the meaning of section 73(7) of the Public Officers Law. These persons are president and vice-president, respectively, of the "Private Firm" and are principal investors. Any application by the "Private Firm" constitutes an appearance by these persons. Inevitably, principals of the companies submitting proposals will be required to appear before representatives of DCJS.
Under section 73(7), a former State employee is prohibited from appearing before his former State employer in relation to an application with respect to which he was directly concerned and in which he personally participated while employed by the State within the past two years. There is no doubt that the subject persons were intimately and deeply involved in the subject matter of the application they apparently intend to make. Between 1982 and 1985 these individuals, as director and senior technical staff person, respectively, were part of a four-person unit within DCJS developing an automated classification system. With the resignation of these two individuals and the inability to recruit qualified replacements, the internal project was terminated. Now DCJS plans to contract for provision of an Automated Fingerprint Identification System. The system will be broader in scope than the internal project that the subject persons developed. A major portion of the system to be procured, however, is fingerprint image acquisition and automated classification of information. You have indicated that the commercially available systems are quite similar to the technology developed by the subject persons and the other members of the DCJS project unit. Thus, the proposal that would be submitted by the "Private Firm" and the other bidders would include as a major component an image acquisition and automated classification system, which was also the objective of and was being developed by the subject persons while they were employed by DCJS.
Section 73(7) addresses the ethics problems that arise when a State employee leaves State service to work in the private sector. State employees who know that they are leaving State service may, consciously or otherwise, give favorable treatment to potential employers or act so as to situate themselves better for contemplated employment in the private sector. The "Private Firm" was incorporated as a close corporation under New York law in early 1983 with a business plan including the same objective as those of the DCJS Identification, Research and Planning Unit in which the subject persons then worked and continued to do so until February 6, 1985. One of the purposes of section 73(7) is to remove any doubt in the public's perception as to whether actions by an employee or officer prior to separation from the State were solely in the public interest (1984 Op Atty Gen 46). The Legislature decided to eliminate the potential for impropriety or the appearance of impropriety by prohibiting State officers and employees, for a period of two years after the termination of State service, from appearing as to certain matters before the State agencies that employed them (ibid.). In our view, the public reasonably might question whether the subject persons carried out their public responsibilities solely in the public interest or whether they consciously or otherwise acted to further their private business objectives. It is this potential for abuse and appearance of impropriety that forms the underpinnings for the two-year rule expressed in section73(7) of the Public Officers Law. In our opinion the subject persons are barred by section 73(7) of the Public Officers Law from submitting a proposal for provision of an Automated Fingerprint Identification System and, therefore, DCJS should not accept or consider a proposal by the "Private Firm".
There is a second reason why DCJS should refuse to accept or consider the proposal by the "Private Firm". We belive that the subject persons, in establishing the "Private Firm" in 1983 and continuing their involvement in the company through 1985 while employed by DCJS in the development of the ACS, violated section 74 of the Public Officers Law. Officers and employees of State agencies must conduct themselves so as not to raise suspicion among the public that they are likely to be engaged in acts that are in violation of the public trust (Public Officers Law, § 74[3][h]). Under this provision, State officers and employees must avoid even the appearance of impropriety. In view of the striking similarity of the objectives of the "Private Firm", as indicated by its business plan of 1983, and the objectives of the ACS project in which the subject persons were involved while at DCJS, in our view these persons violated section 74(3)(h) of the Public Officers Law. A member of the public reasonably may have questioned whether the two State employees exercised their responsibilities solely in the public interest. It is this appearance of impropriety that section 74 seeks to eliminate. In light of these past violations by the subject persons (unknown by DCJS until late in 1984), in our view officers of DCJS cannot now consider proposals by the "Private Firm" to develop the Automated Fingerprint Identification System. To do so would permit the subject persons now to benefit from their actions in violation of section 74. In considering a submittal by the "Private Firm" under these circumstances, officers of DCJS by their actions would raise suspicion that they are violating their public trust within the meaning of section 74 of the Public Officers Law.